IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

VERSUS                                    CRIMINAL NO. 1:09cr100WJG-RHW

LATANICIA McMILLAN ROGERS (1)
AND WAYNE ROGERS (2)

O R D E R

THIS CAUSE is before the Court on motions of the Defendants, Latanicia McMillan Rogers [Latanicia], and Wayne Rogers [Wayne] for judgment of acquittal [66,74, respectively] pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or in the alternative, for a new trial. After due consideration of the motions, the evidence of record, the applicable law, and being otherwise fully advised in the premises, this Court finds as follows.

These Defendants were found guilty on May 24, 2010, following a jury trial, of the following crimes: conspiring to obtain payment of a false or fraudulent claim; and embezzlement, stealing and converting of money or other property belonging to the United States having a value of more than $1,000.00. (Ct. R., Doc. 60.) In addition, Latanicia was found guilty of the following crimes: submitting false and fraudulent claims on December 29, 2004; two counts of submitting false and fraudulent claims on February 18, 2005; knowingly and willfully falsifying, concealing, or covering up a material fact in connection with a health care benefits claim on December 29, 2004; and knowingly and willfully falsifying, concealing, or covering up a material fact in connection with a health care benefits claim on December 16,

2004. (*Id.*) According to Latanicia, errors in the introduction of certain evidence and inadequate jury instructions resulted in insufficient evidence to support the conviction in this case. (Ct. R., Doc. 66, p. 2.) Latanicia contends that the Court erred in admitting into evidence a summary chart purporting to show payments made from a certain bank account to Latanicia. (*Id.*, p. 1.) The United States did not present the underlying records which support the summary so that adequate cross examination could be made, according to Latanicia. (*Id.*) Latanicia also contends that the Court erred in granted a deliberate ignorance instruction and in failing to give the "good faith" instruction offered by the Defendants. (*Id.*, p. 2.)

The summary of payments made to Latanicia and Wayne from the Primary Physical Medicine, Inc. [PPMI] bank account was created from voluminous records supplied by the United States to the Defendants prior to trial. (Exh. G-31.) Over one hundred checks and debits were made to Latanicia, Wayne, and CMC Professional Services [CMC], which was owned by Latanicia and had an adjoining office to PPMI in Gautier, Mississippi. (*Id.* and Tr. Test.) The summary was admitted by Special Agent Lynn Melear who prepared the chart after examining the aforementioned bank records. (Tr. Test.)

Wayne advances the same arguments in support of his motion and also contends that the admission of Exhibit G-31, a summary chart showing payments made to Latanicia, was an error. (Ct. R., Doc. 74, p. 1.) He claims that the deliberate ignorance instruction should not have been given and asserts that the "good faith" instruction requested by the Defendants should have been part of the instructions given by the Court. (*Id.*, p. 2.)

## Discussion

A motion for a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of

Criminal Procedure, "challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998), *cert. denied* 526 U.S. 1043 (1999). On a motion for new trial under Rule 33 of the Federal Rules of Criminal Procedure, a new trial is granted "only upon demonstration of adverse effects on substantial rights of a defendant." *United States v. Rasco*, 123 F.3d 222, 228 (5th Cir. 1997), *cert. denied* 522 U.S. 1083 (1998) (citing *United States v. Cooks*, 52 F.3d 101, 103 (5th Cir. 1995)). All evidence is viewed in a light most favorable to the United States, and all reasonable inferences and credibility choices are considered to support of the jury's verdict. *United States v. Bishop*, 264 F.3d 535, 549-550 (5th Cir. 2001), *cert. denied* 535 U.S. 1016 (2002); *United States v. Kim,* 884 F.2d 189, 192 (5th Cir. 1989). If any rational trier of fact could have found proof of the essential elements of the crime beyond a reasonable doubt, the verdict will stand. *United States v. Carbajal*, 290 F.3d 277, 289 (5th Cir. 2002), *cert. denied* 537 U.S. 934. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Bermea,* 30 F.3d 1539, 1551 (5th Cir. 1994), *reh'g & sugg. for reh'g en banc denied* 39 F.3d 322, *and cert. denied* 513 U.S. 1156 (1995).

I.  Summary Chart Depicted in Exhibit G-31

The summary chart at issue contains records of payments made from the PPMI's bank account to Latanicia, Wayne, and CMC. (Exh. G-31.) A district court may admit summary testimony where the evidence presented is voluminous and complex. *United States v. Ollison*, 555 F.3d 152, 162 (5th Cir. 2009). Summaries are acceptable when the evidence is voluminous and review by the jury would be inconvenient. *Bishop*, 264 F.3d at 547.

Latanicia contends that she was prejudiced by the introduction of the summary chart because the only other proof offered by the United States concerning her interest in PPMI was contained in the testimony of Jim Davis Hull, who indicated that she received 15% of the receivables in the company, yet contradicted himself by testifying that he was the 100% owner of the business. (Ct. R., Doc 67, p. 4.) The United States argues that Exhibit G-31 was properly admitted into evidence and verified by Melear's testimony that the summary chart was prepared from bank records kept in the regular course of business of Union Planter's Bank. (Ct. R., Doc. 78, p. 1.)

Federal Rule of Evidence 1006 provides as follows:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

When Defendant Latanicia objected to the use of the summary evidence, the Assistant United States Attorney [AUSA] indicated that the underlying documents were presented to the Defendants months earlier and that the records were available in the courtroom should the Defendants wish to use those records. (Ct. R., Doc. 78, p. 2.) Although the Defendants maintain that the United States should have introduced the actual bank records into evidence which support the summary chart, Rule 1006 does not mandate that such evidence should be part of the trial record. *See United States v. Valencia*, 600 F.3d 389, 417-8 (5th Cir. 2010), *petition for cert. filed* July 12, 2010. In addition, Defendants did not dispute the AUSA's assertion that the original checks were in the courtroom available for examination as required under Federal Rule of Evidence 1006. *United States v. Normile*, 587 F.2d 784, 787 (5th Cir. 1979). The Court finds

no basis for overturning the conviction based on the use of the summary evidence in this case.

II.     Deliberate Ignorance Instruction

Defendants contend the Court improperly instructed the jury in the following instruction:

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his or her eyes to what would otherwise have been obvious to him or her.  While knowledge on the part of a defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded herself or himself to the existence of a fact.

A deliberate ignorance instruction is prohibited where evidence is available to establish only actual knowledge of the crime.  *United States v. Threadgill*, 172 F.3d 357, 369 (5th Cir. 1999), *cert. denied* 528 U.S. 871.  The instruction is properly given when "a defendant claims a lack of guilty knowledge and the proof at trial support an inference of deliberate indifference." *Threadgill*, 172 F.3d at 368.  The instruction is also utilized when the evidence leads to the conclusion that the defendants were aware that there is a strong likelihood that their conduct involved wrongdoing.  *United States v. Peterson*, 244 F.3d 385, 394 (5th Cir. 2001), *cert. denied* 534 U.S. 857.

In this case, Jim Davis Hull testified that he did not investigate any aspect of Medicare or of the operations at PPMI, but he knew he wanted to go into business with Latanicia.  (Tr. Test.) Hull wanted to open his own business and approached Latanicia about entering a business venture in which he would supply the money and she would run the business.  (*Id.*)  The business offices were put in her name, although he eventually moved the bank accounts out of her name. (*Id.*)  Latanicia procured all the computer equipment for the office.  (*Id.*)  She also did all the hiring for the office, according to trial testimony.  (*Id.*)

Hull testified that Latanicia brought Wayne into the operation to be in charge of the

medical staff. (*Id*.) Wayne was responsible for the training. (*Id*.) Yoguslavakia Price, and Frances Bridges confirmed that Wayne trained the technicians in the field. (Tr. Test.) Price stated that she questioned Wayne about whether technicians should be certified and he had no response. (*Id*.) Bridges testified that she did not perform all the treatment called for on the treatment slip. (*Id*.) She further testified that she did not perform more than 30 minutes of treatment at a time on a patient, and if a billing showed that a patient received longer treatment from her as evidenced by care statements submitted under her name, the statements were inaccurate or in error. (*Id*.)

Melear interviewed Latanicia after PPMI closed in July 2005. (*Id*.) According to Latanicia, Jackie Crawley approached Latanicia to provide payroll and payroll tax service for PPMI. (*Id*.) Latanicia began by securing an office in Alabama along with a physician and nurse practitioner; however funding for that office was never provided. When Latanicia was interviewed again in August of 2007, she claimed to have minimal involvement in PPMI's operations, although Hull testified that Latanicia received 15% of the net profits from PPMI. (*Id*.)

Dr. Edward Henderson testified that he did not see any of the patients but he did review the practitioner's work. (Tr. Test.) He did not backdate paperwork and would not have approved treatment by unlicensed technicians. (*Id*.)

Heather Shephard, a benefits administrator for CAHABA, a company which processes Medicare claims, testified about claims processing. (Tr. Test.) She stated that CAHABA sent material to providers to educate them on claims requirements. (*Id*.) Shephard also testified that if a provider called with a need for additional training, CAHABA would provide free, in-house

training at the provider's location. (*Id*.) She identified certain forms submitted on behalf of PPMI by Latanicia. (Exhs. G-20 through 24.) These forms included an enrollment form for electronic data interchange to allow PPMI to submit billings electronically for payment. (Exh. G-22.)

John Feinstermaker, a safeguard administrator at CAHABA, testified that part of his work was to identify fraud and abuse in claims presented for payment. (Tr. Test.) He stated that misrepresenting services for payment falls within these categories. (*Id*.) He outlined specific claims submitted on five patients as examples of excessive billing by PPMI. (Exhs. G-25(a)-(e).)

Rhonda Williams, who worked as an administrative assistant, testified that she had known Latanicia for approximately 15 years, and they had worked at a local grocery store together. (*Id*.) Williams stated that none of the technicians who made home visits were at a house for 5 to 10 hours a day as shown on the billing submissions; they were in each home no longer than an hour. (*Id*.) Williams stated that Hull and Latanicia were her bosses, with Latanicia supervising the day-to-day operations in the Gautier PPMI office. (*Id*.) Latanicia trained her in billing practices. (*Id*.) She stated that a doctor did not visit the patients involved in therapy with PPMI. (*Id*.) Wayne supervised the technicians who did the therapy. (*Id*.) Williams testified that she told Latanicia and Wayne about complaints that the technicians visiting patients were not licensed, and they allegedly responded that they would take care of the situation. (*Id*.) Williams also stated that a woman named Tina complained to Latanicia and Hull about incorrect billing practices at PPMI, such as billing for excessive hours in the home when the technicians only remained in the home for about an hour, but nothing was done about the situation. (*Id*.)

Williams further testified that Latanicia told her to change dates on forms so that billing

for a particular patient could be continued. (*Id*.) Any telephone calls from Medicare were routed to Latanicia. (*Id*.)

Renee Wilson worked at CMC and PPMI and was hired by Latanicia to do billing. (*Id*.) Wilson stated that she had no prior experience with billing; Latanicia trained her in billing and Wilson was sent to formal training only after she had worked at PPMI for quite some time. (*Id*.) She stated that Latanicia was in charge of the office. (*Id*.) Wilson testified that she told Latanicia that forms should not be billed that were not signed by a patient. She also told Latanicia that there were concerns that the technicians were not certified, but nothing was done to correct either issue. (*Id*.) Latanicia instructed Wilson on how to call Medicare to resolve problem claims. (*Id*.) Wilson further testified that she received a bonus when she billed a large number of claims. (*Id*.)

Tina Daniels testified that she worked in billing and claims processing at PPMI. (Tr. Test.) She mentioned to Latanicia and Hull her concern about a lack of patient signatures on the encounter forms, but was allegedly told that she did not know what she was talking about in regard to necessary information on the forms. (*Id*.) Daniels affirmed that Wayne supervised the technicians. (*Id*.)

Qwin Journey confirmed that Latanicia supervised the billing clerks and was in charge of hiring and firing of personnel. (Tr. Test.) She also stated that Latanicia told her she was a part owner of the company. (*Id*.)

The evidence established by this testimony shows that Wayne trained and supervised technicians even though he had no history as a licensed therapist; that billers notified Latanicia that overbilling for time spent with Medicare patients was not proper; that patient records were

changed and backdated to be approved for Medicare payment; and that no doctor or practitioner supervised the treatments. (Tr. Test.)

District courts have wide latitude in formulating jury instructions. *United States v. Porter*, 542 F.3d 1088, 1093 (5th Cir. 2008), *reh'g & reh'g en banc denied*, 345 Fed. Appx. 34 (5th Cir.), *and cert. denied* ___ U.S. ___, 129 S.Ct. 2826 (2009). The court is in error only if an instruction is denied which: (1) is a substantively correct statement of the law, (2) is not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a particular defense. *Porter*, 542 F.3d at 1093.

The deliberate ignorance instruction is used "to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge." *United States v. Wells,* 262 F.3d 455, 465 (5th Cir. 2001). The instruction "should only be given when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." *Wells,* 262 F.3d at 465 (quoting *United States v. McKinney,* 53 F.3d 664, 676 (5th Cir.1995), *cert. denied* 516 U.S. 908 (1995)).

In this case there is considerable evidence that Latanicia was told by many different individuals that the billing practices used by PPMI were questionable. Shepard testified that informational pamphlets were sent to providers to assist them in reporting billable hours to Medicare. Training and support were available from CAHABA at any time, and provider manuals were supplied; but Latanicia did not call CAHABA for support at any time. Latanicia also fielded telephone calls from Medicare about problems with claims which should have alerted her to improper billing practices.

In addition, both Defendants were told by several co-workers that there were concerns about Wayne training technicians and that the technicians were not certified. Although the Defendants assured the individuals that they would look into the situation, nothing was ever done to obtain more information. This evidence tends to show that the Defendants purposely avoided learning about the proper billing methods or what was required of technicians. Where "the choice is simply between a version of the facts in which the defendant had actual knowledge, and one in which he was no more than negligent or stupid, the deliberate ignorance instruction is inappropriate." *United States v. Lara-Velasquez,* 919 F.2d 946, 951 (5th Cir. 1990). In this case, however, both Latanicia and Wayne were in positions of authority; Latanicia was described as the office manager with supervisory authority over billing clerks and Wayne was described as the supervisor and trainer of the technicians. Either of these individuals could have followed up on the concerns of the other workers regarding billing practices, and the questions about the certification of the technicians. Although several billing clerks were sent for further training, Latanicia did not avail herself of this information and did not seek guidance from Medicare or CAHABA to determine whether PPMI's practices were proper. Wayne did nothing to determine if he was properly training the technicians or if those individuals required further certification beyond his training sessions to properly carry out their jobs. This could reasonably be construed as an attempt to avoid learning about the propriety of the business practices at PPMI and does not reflect mere negligence or stupidity. A deliberate ignorance instruction may be given where evidence may be construed as showing either actual knowledge or contrivance to avoid learning the truth. *United States v. Saucedo-Munoz*, 307 F.3d 344, 348-9 (5th Cir. 2002), *cert. denied* 537 U.S. 1178 (2003). The Court finds no error in the giving of the deliberate ignorance instruction

in this case.

III.     Failure to Give "Good Faith" Instruction

Defendants assert that the Court erred in denying the requested "good faith" instruction when the deliberate ignorance instruction was given. The requested instruction included a section which provided that reliance on advice of an accountant or attorney may constitute good faith. (Ct. R., Exh. C-2(c)). The instructions in this case included the substantive charges concerning this case and specific explanatory charges of the intent necessary to find the Defendants guilty of the crimes as charged. "When the court instructs the jury [regarding the United States'] burden of proving that the defendant's conduct was willful and then properly defines that term, it adequately conveys the concept of the good faith defense." *United States v. Gunter*, 876 F.2d 1113, 1119-20 (5th Cir. 1989), *cert. denied* 493 U.S. 871. The Court finds no reason to grant a motion for new trial based on this argument.

After thorough review of the evidence and arguments, the Court finds that a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict. *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003). The Court finds no error so significant or views the evidence so weak as to justify the granting of a new trial. Therefore, this Court finds that no miscarriage of justice has occurred by the rendering of the jury verdict. The verdict of guilt was justified by the testimony and inferences to be drawn therefrom. The Court finds that Defendants' motions for new trial should be denied. It is, therefore,

ORDERED AND ADJUDGED that the motions of Defendants Latanicia McMillan

Rogers and Wayne Rogers for judgment of acquittal [66,74, respectively] pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or in the alternative, for a new trial be, and are hereby, denied.

SO ORDERED AND ADJUDGED this the 6th day of August, 2010.

                                                *Walter J. Gex III*
                                    UNITED STATES SENIOR DISTRICT JUDGE